Paolo GUCCI, Plaintiff,

v.

GUCCI SHOPS, INC., Defendant.

No. 83 Civ. 4453 (WCC).

United States District Court,
S.D. New York.

June 17, 1988.

al and impulsive decisions of those involved, the fierce battles which ensue, and the senseless destruction they cause. This case is but a skirmish in one of the most publicized family disputes of our time, among the heirs of Guccio Gucci, who founded the business empire which bears his name. It is recognized internationally as a manufacturer and retailer of high-quality leather goods and other fashion accessories and gift items. The Gucci family feud, which has raised legal issues currently being litigated before judges and arbitration panels throughout the world, at enormous cost to members of the family and the businesses they control, is also the focus of a recent best-selling book written by Gerald McKnight entitled *Gucci: A House Divided.*

In this action for declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, plaintiff Paolo Gucci seeks the Court's declaration that: (1) he has the right to use his name Paolo Gucci in the United States in his business of designing and developing products; (2) he may authorize third parties to use his name Paolo Gucci in connection with products designed by him or under his supervision; and (3) that such use of his personal name does not infringe the trademark or other proprietary rights of defendant Gucci Shops or otherwise compete unfairly with Gucci Shops. In addition, plaintiff has asserted causes of action for unfair competition and tortious interference with his business and contractual relations based on threats and allegedly unsupported claims by defendant which have effectively prevented plaintiff from proceeding with his business ventures.

Defendant Gucci Shops has counterclaimed against plaintiff for trademark infringement and dilution, unfair competition, breach of a 1972 Guccio Gucci, S.r.l. Shareholders Agreement, false designation of origin and abuse of process.

After a careful analysis of the evidence presented to the Court at a bench trial, for the reasons outlined below, plaintiff Paolo Gucci will be permitted to use his name in the manner described below to signify his

Speiser & Krause, P.C., New York City (Joseph A. McManus, of counsel), and Blum Kaplan, New York City (Lawrence Rosenthal, Randy Lipsitz, Charles P. LaPolla, of counsel), for plaintiff.

Patton, Boggs & Blow, Washington, D.C. (Allan A. Tuttle, of counsel), and Gold, Farrell & Marks, New York City (Paul V. LiCalsi, of counsel), for defendant Gucci Shops, Inc., now Gucci America, Inc.

WILLIAM C. CONNER, District Judge.

## OPINION AND ORDER

Since the time of Cain and Abel, family disputes have been marked by the irration-

participation in the design of products, but is prohibited from using the names Gucci or Paolo Gucci as a trademark or trade name. This opinion incorporates the Court's findings of fact and conclusions of law pursuant to Rule 52(a), Fed.R.Civ.P.

*Background*

Plaintiff Paolo Gucci is a citizen of Haiti and maintains an office and residence in New York City and a residence in England. Defendant Gucci Shops, Inc. (now Gucci America, Inc.) is a New York corporation having its principal place of business on Fifth Avenue in New York City. Defendant maintains a retail store on Fifth Avenue and additional retail stores throughout the United States. While the Gucci name is a well-known trademark throughout the world, Gucci Shops operates only in the United States.

Plaintiff was born in Florence, Italy on March 29, 1931. The name given to him at birth was Paolo Gucci and he has been known by that name throughout his life. Paolo Gucci's grandfather, Guccio Gucci, started a leather goods business under the name Gucci in Florence, Italy in the early 1900's. Guccio Gucci had three sons—Aldo, who is plaintiff's father, and Rodolfo and Vasco. Over the years, Aldo, Rodolfo and Vasco have been involved in the Gucci family business. Rodolfo and Vasco are deceased. Aldo Gucci has three sons—Paolo, Roberto and Giorgio. Rodolfo Gucci had one son, Maurizio Gucci. Vasco Gucci had no offspring relevant to this case.

The first Gucci store was located in Florence, Italy. In 1939, a Gucci store was opened in Rome and plaintiff's family moved to Rome and lived in a house in the back of the store. Aldo Gucci was responsible for operating the store. Plaintiff became formally employed at the Gucci store in Rome in 1952 as an assistant salesman. After approximately two years in Rome, plaintiff was married and moved back to Florence. After the move, plaintiff divided his time between the Gucci store in Florence and the Gucci factory in Florence.

Defendant Gucci Shops was organized in 1953 by members of the Gucci family in New York. Today, Gucci Shops is the owner in the United States of the trademark "GUCCI" and of the other Gucci trademarks it employs, and it sells "Gucci" products made in Italy and in Miami, Florida.

Gucci Shops has grown considerably over the past thirty years, and today it owns and operates 21 retail stores throughout the United States. An additional 13 retail stores and boutiques are operated in the United States by persons who have been granted franchises by Gucci Shops. In addition to the sales of "Gucci" merchandise at Gucci stores owned or franchised by Gucci Shops, "Gucci" merchandise is sold in hundreds of better department stores, jewelry stores and other retail outlets throughout the United States.

In 1953, plaintiff's grandfather Guccio Gucci died and the Gucci business was carried on by his sons Aldo, Vasco and Rodolfo. In 1983, Rodolfo Gucci died. Plaintiff's cousin Maurizio Gucci now controls 50% of the shares of Gucci Shops, which he received upon the death of his father Rodolfo. The remaining 50% is divided among plaintiff's father, Aldo, plaintiff's brothers Roberto and Giorgio, and a third party to whom plaintiff sold his shares. Plaintiff no longer holds any interest in any Gucci companies.

Plaintiff was employed by Guccio Gucci S.r.l. in various positions from approximately 1952 through September 1978. Despite vigorous attempts by defendant to refute plaintiff's contention that he was a designer and stylist of "Gucci" products, all of the credible evidence at trial, including defendant's own documents, established conclusively that Paolo Gucci was a designer and stylist of many Gucci products. Two former employees of Guccio Gucci who worked with Paolo Gucci, Sergio Cocchi and Massimo Filo Guarnieri, both testified that Paolo Gucci was the designer and stylist for Gucci. Indeed, according to their testimony, after Paolo Gucci left his position, the company promoted and hired a series of stylists who were intended to replace him but who were unable to maintain the unique Gucci image. This testimony merely confirmed what was evident from many of defendant's own internal doc-

uments—that Paolo Gucci was Gucci's chief designer and stylist.

In addition to his involvement in the design of "Gucci" products, Paolo Gucci has, at various times, been an officer director and employee of Gucci Shops, Guccio Gucci S.r.l. and Gucci Parfum Company. He was also a shareholder of either Guccio Gucci S.r.l. or Guccio Gucci S.p.A. continuously from February 24, 1972 to at least February 3, 1986.

The removal of Paolo Gucci from various positions he held at Gucci entities stemmed from friction which developed between Paolo and other family members. In the 1970's, Aldo Gucci managed the American Gucci Shops operation while Rodolfo Gucci was in charge of the Italian operation. Plaintiff's uncle, Vasco Gucci, was in charge of the Gucci factory in Florence. When Vasco Gucci died in 1974, plaintiff became head of the Florence factory while remaining chief designer for the company. By the mid–1970's, according to Paolo, Rodolfo's interference with Paolo's work as head of the factory and chief designer strained their relationship to the breaking point. On one occasion, when Rodolfo tried his hand at designing a handbag and then showed his work to Paolo, Paolo disgustedly threw it out the window. Shortly thereafter, during Paolo's presentation of the new Gucci collection to buyers, he was publicly upbraided causing him to stalk out, abandoning the presentation. This, according to defendant, led to Paolo's suspension.

In 1978, plaintiff's father Aldo invited plaintiff to come work with him at Gucci Shops in the United States. Plaintiff accepted this offer and moved to New York in early 1978 where he became Vice President of marketing for Gucci Shops.

Thereafter, plaintiff sought confirmation from Rodolfo in Italy that he retained his employment status with Guccio Gucci, S.r.l. to protect his employment benefits under Italian law. According to Paolo, litigation which he commenced to collect his severance pay led to the termination of his employment by the Italian Gucci company in 1978. Gucci Shops contends that Paolo was discharged for the additional reason of his alleged organization and participation in several companies in Haiti making handbags allegedly in competition with Gucci. Paolo maintains that this production was undertaken merely to assure a supply of high-quality merchandise for Gucci Shops.

After losing his job, plaintiff attempted to earn a living by exploiting his skill and experience as a designer. Having been denied his family's approval for his new venture, plaintiff commenced an action for declaratory judgment in federal court in the Southern District of New York seeking a declaration of his right to use his personal name as a trademark and also to identify himself as a designer. The Court dismissed that action for lack of a justiciable controversy because the record did not establish that any goods had yet been offered for sale under plaintiff's name. *Paolo Gucci v. Gucci Shops, Inc.*, 81 Civ. 942 (LPG).

Following the dismissal of the lawsuit and various attempts at reconciliation, in June 1982 plaintiff was fired by the Italian Gucci Parfum company, and the following month was terminated from employment by the remaining Gucci companies at which he was employed. He was removed as a director of Gucci S.p.a. in 1983. Plaintiff has received no compensation or other form of remuneration from any Gucci entities since July 1982.

Following Paolo's unsuccessful attempts at reconciliation with members of his family, Paolo once again attempted to revive his career as a designer. Plaintiff designed handbags and other leather goods for an Italian company called Italia Italia and licensed that company to use his full name Paolo Gucci in connection with such products. Italia Italia shipped samples of the "Paolo Gucci" handbags to a United States company called Saffron which placed the bags on display in its showroom. Plaintiff also placed an advertisement in the New York Times for the "Paolo Gucci" bags which were to be distributed by Saffron. After seeing the advertisement, defendant's counsel wrote to Saffron advising Saffron that Gucci Shops owns the exclusive rights to the trademark "Gucci" in the

United States and demanding that Saffron refrain from any use of the "Gucci" name that violated the rights of Gucci Shops. This letter caused Saffron to terminate its arrangement with Paolo Gucci.

Shortly thereafter, in June 1983 plaintiff commenced the present action requesting a declaration that he has the right to use the name Paolo Gucci on products of the same type as those sold by Gucci Shops, and requesting injunctive relief to prevent Gucci Shops from claiming that plaintiff's use of the Paolo Gucci name infringes upon Gucci Shops' rights in the trademark "Gucci". Initially, defendant sought to have this action dismissed for lack of a justiciable controversy. At approximately the same time, plaintiff licensed a company called Pacific Jewelry (Panache) to use his full name Paolo Gucci in connection with items of costume jewelry to be designed by or in collaboration with plaintiff. He also licensed Kimball, a furniture manufacturer, to use his name Paolo Gucci in connection with office furniture and pianos to be designed in collaboration with plaintiff. After receiving letters from defendant's attorneys, however, those companies terminated their dealings with Paolo Gucci.

In a final attempt at reconciliation, in mid–1984 Maurizio Gucci and Paolo Gucci entered into an agreement in which Paolo agreed to sell his shareholder's interest in the various Gucci Companies to Maurizio, and consented to the appointment of Maurizio as President and Chairman of the Board of Directors of the various Gucci companies. Maurizio Gucci was also to receive a commitment from Paolo that he would not use his name commercially. As part of the arrangement, Paolo was to be appointed President of a Gucci licensing company which would license the Gucci name throughout the world. Paolo received a 10% down payment from Maurizio for his Gucci shares and voted to place Maurizio in charge of the Gucci companies. Pursuant to the agreement, plaintiff entered into a consent preliminary injunction in this action and also dropped his pending trademark applications. The deal between Paolo and Maurizio, which was to become effective at the end of 1984, was never consummated.

An arbitration panel in Geneva, Switzerland is now adjudicating the dispute in which both parties seek rescission of the agreement as well as damages.

Plaintiff is currently designing lamps, sunglasses, furniture, sleep wear, bedding accessories and fabrics, wall coverings, ladies underwear, lingerie, plates and flatware. In this action, plaintiff seeks a declaration from this Court describing in what manner, if any, he may use his name on the products he designs. Defendant maintains that plaintiff may not use his name in any manner on products he designs for two reasons: (1) plaintiff is prohibited by the terms of a Guccio Gucci Shareholders Agreement which he signed in 1972 from using his personal name in any commercial endeavor; and (2) any use by Paolo Gucci of his personal name on products he designs will create confusion in the minds of the purchasing public with products marketed under defendant's "Gucci" trademark. Plaintiff, on the other hand, asserts that (1) he is not bound by the 1972 Shareholders Agreement; and (2) the use of his personal name, Paolo Gucci, on products which he designs will not cause members of the public to believe that they are purchasing defendant's "Gucci" products.

## DISCUSSION

### The 1972 Shareholders Agreement

Clause 1 of the Shareholders Agreement of Guccio Gucci S.r.l. dated February 24, 1972 provides that Messrs. Aldo, Rodolfo, Giorgio, Paolo, Roberto and Vasco Gucci "all have an interest as shareholders" in the capital stock of Guccio Gucci and of another company, and that the "Gucci" family name not be used for business purposes, except in connection with the company's operations. The agreement continues as follows:

> On the basis of the foregoing statement, which shall be considered an integral and substantial part of this instrument for all legal purposes, in order to clarify the provisions of Article 7 of the bylaws of "GUCCIO GUCCI s.r.l." and the charter of BOUTIQUE GUCCI s.r.

l.,", the following is agreed and stipulated.... 1) These Messrs. Gucci jointly and severally promise one another on behalf of themselves, their heirs and successors, to refrain, and they do from this time forward refrain, from the use of the family name of "GUCCI" for the exercise of any further industrial, commercial or artisan activity, even if additions or changes were to be made to said name with a view to avoiding confusion with the name of the companies ... for the entire duration of the respective company charter, now extending to December 31, 2075.

This clause from the 1972 Shareholders Agreement reflects, almost literally, the provision set out in Article 7 of the Articles of Guccio Gucci S.r.l. which provides that "the status of quota-holder entails an absolute prohibition to use the 'Gucci' family name in connection with the exercise of any other future industrial, commercial and artisan activity even if additions or changes were made to such name for the purpose of avoiding confusion with the Company's denomination ... [S]uch prohibition shall continue throughout the life of the company, i.e. until 31st December 2075 or until such later date which may be agreed upon at a future time and shall apply also to a quota-holder who may have lost such status for whatsoever reason."

■ According to defendant, the 1972 Shareholders Agreement is unambiguous and under Italian law clearly prevents Paolo Gucci from using his name, in any manner, even to identify himself as the designer of a specific product. Plaintiff, on the other hand, maintains that under Italian law the 1972 Shareholders Agreement is no longer binding on Paolo Gucci for several reasons discussed below. After a careful review of the testimony of the Italian legal experts, and all other relevant materials, as well as a review of the conduct of the parties since the transformation of Guccio Gucci from an S.r.l. to an S.p.A., the Court concludes that the 1972 Shareholders Agreement is no longer binding on Paolo Gucci.

In 1982, when Guccio Gucci S.r.l. was transformed from a limited liability company into a joint stock company and the Articles of Guccio Gucci were amended accordingly, the wording of Article 7 quoted above disappeared and a new Article 12 was introduced, reading as follows:

Without prejudice to art. 2390 of the Civil Code, it is also prohibited to the Shareholders to initiate or to perform particularly under the patronym "Gucci" any activity which either directly or indirectly competes with the Company and with the activities which constitute the purposes of the Company, unless expressly authorized by the Board of Directors.

In commenting on this change in the Articles of Guccio Gucci, one of plaintiff's legal experts, Professor Gianfranco Palermo noted that

the 1972 Shareholders Agreement made specific reference to certain provisions of the Articles of Guccio Gucci S.r.l., namely those set forth in Article 7 "with a view to clarifying it". As mentioned *supra*, on February 1982 the structure of Guccio Gucci S.r.l. was changed from that of a Limited Liability Company to that of a Joint Stock Company.... The transformation did not result in the termination of the 1972 Shareholders Agreement but the Shareholders agreed upon and the Court ratified a set of new Articles of the Company, which novated the rules set out in Article 7 of the pre-existing Articles of the (S.r.l.). In fact, Article 7 was substituted for by Article 12 and the reference previously contained in it that "such prohibition shall continue throughout the life of the Company ... *and shall apply to a quota-holder who may have lost such status for whatsoever reason*" disappeared from the Articles. It is hardly necessary to observe that, as a consequence of the novation of the Articles, the 1972 Shareholders Agreement originally stipulated to "further clarify" the Articles, as well as the new Articles themselves could only be applicable and enforceable against the current and not also the former shareholders of the Company.

According to Professor Palermo's analysis, the Shareholders Agreement of 1972 was not a separate agreement with a life of its own, but was rather merely an appendix to Article 7 of the Articles of Guccio Gucci S.r.l. Once Article 7 was replaced by Article 12, the Shareholders Agreement of 1972 was novated and no longer was binding on any signatories who ceased to be shareholders of Guccio Gucci. In evaluating this argument advanced by Professor Palermo, the Court must consider two factors: (1) the specific language of the 1972 Shareholders Agreement; (2) the intent and understanding of the signatories to the 1972 Shareholders Agreement as reflected by their conduct since the time the Agreement was executed.

The 1972 Shareholders Agreement was written in Italian, the native tongue of the then members of the Gucci family. As noted above, the relevant part of the Agreement, according to the English translation provided to the Court by defendant Gucci Shops, states:

> On the basis of the foregoing statement, which shall be considered an integral and substantial part of this instrument for all legal purposes, in order to clarify the provision of Article 7 of the bylaws of "GUCCIO GUCCI s.r.l." and the charter of BOUTIQUE GUCCI s.r.l.", the following is agreed....[1]

While the language of the Agreement is somewhat ambiguous, when it is viewed in the light of the conduct of the parties since the time Guccio Gucci was transformed from an S.r.l. to an S.p.a., and Article 7 was replaced by Article 12, it is clear that the signatories of the Agreement did not intend or believe that the Agreement was still binding on non-shareholders of Guccio Gucci. Since the time Guccio Gucci was transformed from an S.r.l. to an S.p.a., defendant and other Gucci family members have had numerous opportunities to use the 1972 Shareholders Agreement to bar Paolo Gucci's activities but have not done so. And defendant, through Maurizio Gucci, has repeatedly tried to negotiate various settlements with Paolo Gucci whose terms would include a ban against the use of Paolo Gucci's name commercially. If the 1972 Shareholders Agreement were still binding on Paolo Gucci, it certainly would have been used against him in previous actions, and there would be no need for Maurizio Gucci to demand a ban on the use of Paolo's name as part of a final settlement.

The deposition testimony of Professor Palermo concerning the enforceability of the 1972 Shareholders Agreement against Paolo Gucci was supported at trial by the testimony of Dr. Vittorio Grimaldi, an Italian legal expert called by plaintiff. In the opinion of Dr. Grimaldi, since the stated purpose of the 1972 Shareholders Agreement was to clarify Article 7 of the by-laws of Guccio Gucci S.r.l., the 1982 Special Shareholders Meeting and amendment of the by-laws constituted an agreement to amend the 1972 Shareholders Agreement so as to incorporate Article 12 of the revised by-laws. This amendment of the 1972 Shareholders Agreement, according to Dr. Grimaldi, eliminated the applicability of

1. It must be noted that the translation originally supplied to the Court by defendant included the word "and" immediately before the words "in order to clarify the provisions of Article 7." Accordingly, until this error was brought to the attention of the Court during the trial, the Court was operating under the assumption that the 1972 Shareholders Agreement stated:

> On the basis of the foregoing statement, which shall be considered an integral and substantial part of this instrument for all legal purposes, *and* in order to clarify the provisions of Article 7 ... the following is agreed ...

The Court's belief that the word "and" was present in this clause led the Court to comment during the trial that the plain meaning of the words of the Agreement indicated that the 1972 Shareholders Agreement had a life of its own separate and apart from the Articles of Guccio Gucci. The absence of the word "and" from the Agreement, however, changes the Court's view of the Agreement. Indeed, absent the word "and", it seems clear that the intent of the parties to the 1972 Shareholders Agreement was to clarify Article 7 of Guccio Gucci, and not to execute a separate document which would impose restrictions beyond those imposed by Article 7 or by any successor to Article 7. It should be noted that Gucci Shops has acknowledged that Paolo Gucci is no longer bound by the name restriction in Article 12 of the 1982 by-laws because he is no longer a shareholder.

the name restriction to shareholders who lost the status of shareholder. The minutes of the 1982 Shareholders Meeting were signed by each of the prior signatories to the 1972 Shareholders Agreement, including Maurizio Gucci, with the exception of Vasco Gucci, who had died earlier. Dr. Grimaldi further testified that even if his interpretation is not clear from the face of the documents, the intention of the parties can be shown by their conclusive behavior ("comportomento concludente") noted earlier.

In earlier stages of this dispute, defendant's posture in the original litigation before Judge Gagliardi, and in the initial stages of this action, is inconsistent with its current assertion that Gucci Shops and the signatories to the 1972 Shareholders Agreement intended and still believe that the 1972 Shareholders Agreement is binding currently on Paolo Gucci. As noted earlier, defendant successfully argued before Judge Gagliardi for the dismissal of the original action for lack of a justiciable controversy. *Paolo Gucci v. Gucci Shops, Inc.*, 81 Civ. 942. Defendant then fought for dismissal of this action on the same ground, claiming that plaintiff's activities were not sufficiently ripe to permit a determination on the merits. Yet defendant's own expert witness on Italian law, Professor Tavormina, testified at trial that in his view the Shareholders Agreement restricts all Gucci family members from using the Gucci name in any activity, in connection with any product, for all time, whether or not likelihood of confusion is created and whether or not such activities are in competition with Gucci Shops. If this were true, then the activities of Paolo Gucci prior to 1983, when this lawsuit was filed, were certainly a breach of the Shareholders Agreement. Indeed, defendant's post-trial memorandum of law asserts that "plaintiff's ... intended future use of [his] name in the United States constitutes an anticipatory breach, of the 1972 Agreement." This assertion was equally true during the pendency of the lawsuit before Judge Gagliardi as well as in the initial stages of this action. Defendant's efforts to have both lawsuits dismissed for lack of a justiciable controversy was, in essence, a concession that the Shareholders Agreement is no longer binding on Paolo Gucci and is of no significance in this suit.

In an attempt to rebut plaintiff's contention that the 1972 Shareholders Agreement is no longer binding on Paolo Gucci, defendant called Professor Valerio Tavormina, an Italian legal expert who is also an attorney for Gucci in Italy and has represented Gucci in prior actions against Paolo Gucci. Tavormina advanced three arguments on behalf of Gucci Shops in favor of the continued enforceability of the Shareholder's Agreement against Paolo Gucci. First, Gucci Shops maintains that in February 1972 Paolo was given shares in Guccio Gucci S.r.l. by his father, Aldo, in exchange for which Paolo executed the 1972 Shareholders Agreement. Having received that consideration in 1972, and having recently sold his shares for an allegedly large sum of money, Paolo Gucci should not now be permitted to keep the consideration which he received in exchange for signing the 1972 Shareholders Agreement and at the same time be excused from compliance with the Agreement. There are, however, two flaws with this argument. First, not all of the signatories to the 1972 Shareholders Agreement received stock at the time the agreement was signed. Aldo, Vasco and Rodolfo received no quota interests in Guccio Gucci S.r.l. when the Agreement was signed. Accordingly, it could logically be concluded, as plaintiff urges, that the quota interests were given to Paolo in recognition of his long devotion to the family business and not as consideration for the promise made by all members of the family, including those who received no stock. Further, even if Paolo's shares did represent consideration for the promise, this still would not negate the fact that the Agreement was novated when the Gucci family members consciously and purposefully adopted a revised company by-law which prohibited use of the Gucci name only by shareholders of the company.

Second, Professor Tavormina noted that, under Italian law, two agreements that contain separate undertakings cannot be

changed by the modification of only one of them:

> [I]f there are two documents which contain two agreements, two contractual disciplines, it is not sufficient for one to make reference to the other in order that whatever modification of one may render the other null. In other words, the content must be examined and the content may be different, even if one makes reference to the other.

Professor Tavormina then pointed out that, in his view, the 1972 Agreement had two separate purposes, only one of which was related to Article 7. In the 1972 Agreement, the signatories first agreed not to use the name "Gucci" for commercial activities until December 31, 2075. Then, "on the premise of everything that has been said above, that which narrative is considered an integral and substantial part of this instrument," the signatories added language "to clarify further" Article 7. Professor Tavormina then concluded: "From this argument, I deduc[e], I surmise that there is an agreement not to use the name Gucci, and later a second agreement to further clarify Article 7 of the two companies I have spoken of." (Tr. 286). A careful reading of the Agreement, however, reveals that Professor Tavormina's portrayal is inaccurate. The document begins by listing the parties to the Agreement. It then contains a section which begins with the word "whereas" which outlines the background and goals of the Agreement. Contrary to Professor Tavormina's characterization, however, no promises or undertakings are made in this section of the Agreement. It is only after the clause stating that the Agreement is being executed "in order to clarify the provisions of Art. 7", that the Agreement recites the precise obligations being imposed on the signatories, including the restrictions on the use of the Gucci name.

Tavormina's third argument to support the continued enforceability of the Shareholders Agreement rests on the language in the Agreement which states that "to clarify the provisions of Article 7 of the bylaws of 'GUCCIO GUCCI s.r.l.' *and the charter of 'BOUTIQUE GUCCI s.r.l.',* the following is agreed ..." (emphasis added). According to Professor Tavormina, since the by-laws of Gucci Boutique s.r.l. have never been amended, and Article 7 is still present there in its original form, the 1972 Shareholder's Agreement is still valid. As stated by Professor Tavormina,

> it is necessary to prove, to demonstrate that both Articles 7 of the bylaws were changed in order to arrive to the conclusion that that modification in the accord, in the agreement, was for both, because as long as there exists only one of the two clarified Article 7, the agreement to further clarify exists (Tr. 286–87).

This argument is unpersuasive for several reasons. First, as noted by plaintiff in the post-trial briefs, the Gucci Boutique by-laws were neither pleaded nor relied upon before the trial. Second, Gucci Boutique consists of a single small shop in Rome established by an ex-employee of Guccio Gucci who was also the girlfriend of one of the Gucci family members. In view of the insignificance of Gucci Boutique when compared with Guccio Gucci, it would be illogical to conclude that the failure to amend the by-laws of Gucci Boutique evidenced a lack of intent to amend the 1972 Shareholders Agreement. The obvious change in the language of Article 7 of Guccio Gucci s.r.l. when it became Article 12 of the newly formed entity, and the serious nature of the stock transactions and the other events at the 1982 Special Shareholders Meeting, when viewed together with the conduct of the parties following the transformation of Guccio Gucci from an S.r.l. to an S.p.a., makes it clear that the parties intended to and did alter their reciprocal obligations in 1982. The failure to amend the by-laws of Gucci Boutique, S.r.l. was almost certainly an oversight consistent with the lack of precision and attention to detail which characterizes many of the other documents in this action. Finally, Dr. Grimaldi, plaintiff's expert, testified that the failure to amend the by-laws of Gucci Boutique, S.r.l. does not alter his opinion that the Shareholders Agreement is no longer enforceable against Paolo Gucci (Tr. 405).

In sum, although the 1972 Shareholders Agreement is somewhat ambiguous, when viewed in light of subsequently executed corporate documents and in light of the conduct of the parties following the transformation of Guccio Gucci from and S.r.l. to an S.p.a., it is clear the 1972 Agreement is binding currently only on shareholders of Guccio Gucci. Having concluded that the Shareholders Agreement is no longer binding on Paolo Gucci, the Court must now turn to the issue of the likelihood of customer confusion of the name Paolo Gucci with the Gucci trademark if Paolo Gucci were to use his name as either a trademark or to identify himself as the designer of a product.

*Likelihood of Confusion*

Defendant Gucci Shops has for many years used the trademark "Gucci" on a wide range of products including leather goods, accessories, scarves, footwear and apparel. In addition, Gucci Shops owns 19 United States Trademark Registrations for the mark "Gucci", covering such diverse products as leather goods, clothing, ties, scarves, shoes, belts, keyrings, automobiles, cigarettes, bathrobes, perfume, linens, china and eyeglasses. Gucci Shops has also used, and owns four United States Trademark Registrations for a repeating pattern of diamond-shaped figures, with the linked letters "GG" at the corners of each diamond.

In determining whether plaintiff committed federal trademark infringement under 15 U.S.C. § 1114(a), false designation of origin under 15 U.S.C. § 1125(a) or common law trademark infringement, "the crucial issue is whether there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused as to the source of goods in question." *Plus Products v. Plus Discount Foods, Inc.*, 722 F.2d 999, 1003 (2d Cir.1983) (citations omitted). Resolution of this issue "depends upon a consideration of the facts and circumstances in each case." *Id.*

In *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir.) *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961), the Court of Appeals for the Second Circuit listed the following factors which a court should consider in determining the likelihood of confusion: (1) the strength of the senior user's mark; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) the likelihood that the senior user will bridge the gap; (5) actual confusion; (6) the junior user's good faith; (7) the quality of the junior user's product; and (8) the sophistication of the buyers. *Id.* at 495.

The great strength of the "Gucci" mark, the very close similarity between the mark "Gucci" and the name "Paolo Gucci" and the near identity of the nature of the primary products bearing those names creates a likelihood that an appreciable number of ordinarily prudent purchasers will be misled or confused as to the source or sponsorship of goods which bear plaintiff's name as a trademark or trade name. *See Bertolli U.S.A., Inc. v. Filippo Bertolli Fine Foods*, 662 F.Supp. 203, 206 (S.D.N.Y. 1987). The evidence at trial of actual confusion, the testimony of individuals experienced in the field, as well as the Crossland Survey which, although somewhat flawed, provided credible evidence of a likelihood of confusion if plaintiff were to use his name as a trademark or trade name, further support this conclusion. There was no persuasive evidence presented at trial, however, that customers are likely to be confused if Paolo Gucci is permitted to identify himself as the designer of products sold under a separate trademark and/or trade name. Nor is there any reason to believe that the generally sophisticated customer, of the type who purchases Gucci merchandise, would be misled into thinking that a set of Samsonite luggage that carried a label indicating that it was designed by Paolo Gucci, would likely cause the customer to believe he was purchasing a Gucci Shops product.

It was undisputed at trial that the "Gucci" mark is a well-known mark internationally and is, therefore, entitled to "strong protection." *Scarves By Vera, Inc. v. Todo Imports Ltd.*, 544 F.2d 1167, 1170–73 (2d Cir.1976). Similarly, the Gucci repeat-

ing diamond "GG" design is a distinctive mark that is associated in the minds of the public with "Gucci" products.

Plaintiff's "Paolo Gucci" mark incorporates the entirety of Gucci Shops' famous "Gucci" trademark. The two marks are distinguished only by plaintiff's addition of the forename "Paolo" to the surname "Gucci." At trial, plaintiff introduced evidence indicating that he has typically displayed a photograph of himself on the items bearing his name as well as a disclaimer indicating that he is no longer associated with the original Gucci line of products. Plaintiff maintains that this photograph and disclaimer are sufficient to dispel any confusion which may result from the similarity between his trade name Paolo Gucci and the Gucci trademark. Based on the testimony and survey evidence presented at trial, however, the Court cannot agree.

While actual confusion is not a prerequisite to a finding of infringement, "there can be no more positive proof of likelihood of confusion than evidence of actual confusion." *Lawn Tennis Association v. British Tennis Agency,* 1 U.S.P.Q.2d 1283, 1288 (S.D.N.Y.1986) [available on WESTLAW, 1986 WL 8067], *quoting Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons,* 365 F.Supp. 707, 715–16 (S.D.N.Y.1973), *aff'd,* 523 F.2d 1331 (2d Cir. 1975). The testimony at trial indicated that although only a small number of plaintiff's products have been sold in the United States, some of them have been brought to Gucci Shops' stores for repair. *See Gemveto Jewelry Co. v. Jeff Cooper, Inc.,* 613 F.Supp. 1052, 1063 (S.D.N.Y.1985), *vacated on other grounds,* 800 F.2d 256 (Fed.Cir. 1986) (erroneous returns evidence of confusion as to source of products).

In addition to this evidence of actual confusion between Paolo Gucci and Gucci products, defendant also retained the firm of Crossley Surveys, Inc. to conduct a survey to assess the likelihood of customer confusion between "Gucci" products and "Paolo Gucci" products. The survey, which was administered by trained interviewers who intercepted shoppers at three separate shopping malls, involved showing the interviewees six cards each of which bore the name of a well-known designer, a seventh card which bore the name Paolo Gucci, and an eighth card which bore the name Cavaluzzo—a fictitious name added to weed out those respondents who were guessing. After being shown each card, the interviewees were asked a series of questions. The survey results indicated that when consumers were shown a card bearing the name Paolo Gucci, eighty-seven percent of them claimed that they had heard of Paolo Gucci handbags even though only a limited number of such bags have been sold in the United States. When asked where these handbags could be purchased, a large majority of these respondents indicated that Paolo Gucci handbags could be bought at locations at which Gucci Shops are located or at stores at which Gucci but not Paolo Gucci handbags are sold. Clearly, these consumers were confused by Paolo Gucci's name and believed that it referred to products which are manufactured by defendant and available at stores owned or licensed by it.

While it is true, as plaintiff contends, that the survey was somewhat flawed in that it used cards bearing the designers' names instead of actual products—such as handbags, and it did not include a card bearing the name "Gucci," these imperfections in the survey do not unduly taint its reliability in assessing customer confusion. The Crossley Survey was conducted properly and is entitled to significant weight. It canvassed a significant segment of the relevant population, was formulated and supervised by qualified experts, contained appropriate questions, and permitted interviewees to frame answers in their own terms. *See American Luggage Works v. United States Trunk Co.,* 158 F.Supp. 50, 54 (D.Mass.1957), *aff'd, Hawley Products Co. v. U.S. Trunk Co.,* 259 F.2d 69 (1st Cir.1958). Finally, although plaintiff launched a full-scale attack on the methods employed in defendant's survey in an effort to discredit it, plaintiff chose not to sponsor an independent survey of his own.

In addition to the evidence of actual confusion as well as the survey evidence on

likelihood of confusion discussed above, on three separate occasions the United States Patent & Trademark Office has refused to register marks consisting of or including the name "Paolo Gucci" based on a likelihood of confusion with the "Gucci" mark. Most recently, the PTO has initially refused to register the expression "Paolo Gucci Designs for Riviera," finding that "Gucci is a dominant feature of the mark" and would thus create confusion with products bearing the "Gucci" mark. The Court of Appeals in this circuit has previously noted that these refusals are entitled to substantial weight. *Syntex Laboratories, Inc. v. Norwich Pharmacal Company*, 437 F.2d 566, 569 (2d Cir.1971); *W.E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 662 (2d Cir.1970).

On the basis of the evidence outlined above, the Court finds that there is a likelihood of appreciable customer confusion if Paolo Gucci were to continue to use his name as a trade name or trademark. The Court must now address the possibility of customer confusion if Paolo Gucci were to identify himself as the designer of products sold under a different trademark which did not include the name "Gucci." Courts have long recognized that "to prohibit an individual from using his true family surname is to 'take away his identity: without it he cannot make known who he is to those who may wish to deal with him; and that is so grievous an injury that courts will avoid imposing it, if they possibly can.'" *Taylor Wine Co. v. Bully Hill Vineyards, Inc.*, 569 F.2d 731 (2d Cir 1978) *quoting Societe Vinicole de Champagne v. Mumm*, 143 F.2d 240, 241 (2d Cir.1944). This is especially so where the second comer has spent his entire mature life working in the relevant business and, as a result, possesses extraordinary experience, skill and a desire to work in his field. Under those circumstances it cannot be said that the individual is entering the particular field "for no apparent reason other than to use a conveniently confusing surname to his advantage." *Id.* at 735.

Balanced against the interests of the individual in using his name in connection with products he designs, is the very strong need of avoiding confusion with the goods of the initial user. "The ultimate aim is to frame an injunction that will avoid confusion in the marketplace, protect a prior company's property interest in its name, and permit an individual to exploit his own identity and reputation in a legitimate manner." *Joseph Scott Co. v. Scott Swimming Pools, Inc.*, 764 F.2d 62 (2d Cir.1985). In balancing these interests, courts have often noted their concern that injunctions in cases such as this be drawn as narrowly as possible. *Id. See also Waterman Co. v. Modern Pen Co.*, 235 U.S. 88, 35 S.Ct. 91, 59 L.Ed. 142 (1914).

With these principles in mind, it is evident that Paolo Gucci is entitled to identify himself as the designer of products so long as he does so in a manner which will not lead an appreciable number of consumers to believe that his products are "Gucci" products. There was no credible evidence presented at trial indicating that customers would be confused if Paolo were to identify himself as the designer of products sold under a different trademark and/or trade name. Further, common sense dictates that if a consumer is purchasing a suitcase, sold under the trademark of "American Tourister," bearing a label stating that it was designed by Paolo Gucci, there is little if any chance that the consumer will be believe he is purchasing a "Gucci" product manufactured by defendant. Moreover, there was overwhelming evidence at trial that Paolo Gucci spent many years cultivating his talent while serving as Gucci's chief designer. Accordingly, it cannot be argued that Paolo Gucci wishes to enter the field of design simply to capitalize on his name, and therefore any decree which would prohibit him from using his name in a manner not likely to lead to customer confusion would be unjustified.

Finally, plaintiff's other claims and defendant's counterclaims are all dismissed. There was no credible evidence at trial that either plaintiff or defendant acted in bad faith at any time.

*Conclusion*

In sum, it is clear based on the evidence adduced at trial that if Paolo Gucci were to continue to use his name as a trademark or trade name, an appreciable number of consumers would confuse his goods with those of the defendant. Therefore, in order to protect the interests of defendant in the "Gucci" name, Paolo is enjoined from using "Paolo Gucci" as a trademark or trade name. To enable Paolo to exploit his own talents and identity, however, he is entitled to use his name to identify himself as the designer of products sold under a separate trademark which does not include the name "Gucci." To avoid confusion, the name Paolo Gucci must always appear after the trademark in advertisements and on labels, and must be no more prominent than the trademark. Moreover, plaintiff must use a disclaimer, similar to the one he now employs, which notifies consumers that he is no longer affiliated with any of the Gucci entities.

Settle judgment on notice.

So ordered.