**In re Paolo GUCCI, et al., Debtors.**

**No. 95 Civ. 1432 (WCC).**

United States District Court,
S.D. New York.

March 20, 1996.

**412**

Parker Duryee Rosoff & Haft, New York City (Allan C. Samuels, Scott A. Mautner, of counsel), for Orologi Paolo Corp.

Gibson, Dunn & Crutcher, New York City (Robert F. Serio, James P. Ricciardi, Marshall R. King, of counsel), for Appellant Guccio Gucci S.p.A.

Patton Boggs, L.L.P., Washington, DC (Allan A. Tuttle, Washington, DC, Gold, Farrell & Marks, New York City, of counsel), for Gucci America, Inc., amicus curiae.

WILLIAM C. CONNER, Senior District Judge.

Guccio Gucci S.p.A. ("GG") appeals from the Order Approving Assumption By Chapter 11 Trustee Of Second Amended License Agreement With Orologi Paolo Corp., entered January 24, 1995 by the United States Bankruptcy Court for the Southern District of New York (Gallet, J.). Gucci America, Inc. ("Gucci America") has filed a brief as amicus curiae in support of GG's appeal.

This Court has jurisdiction over this appeal from a final order of the bankruptcy court under 28 U.S.C. § 158. For the reasons discussed below, we affirm the bankruptcy court's decision.

## BACKGROUND

The facts underlying this case are discussed fully by this Court in *Paolo Gucci v. Gucci Shops, Inc.*, 688 F.Supp. 916 (S.D.N.Y. 1988).[1] We repeat portions relevant to the instant appeal.

### I. The Final Judgment

For many years, Paolo Gucci was employed by GG and its American affiliate, Gucci Shops, Inc. (now known as Gucci America) and served as an officer and director of various Gucci entities. After a falling out with other members of the Gucci family, Paolo left the family business and sold his interest in the Gucci companies. Paolo then attempted to begin a career as an independent designer.

Winick & Rich, P.C., New York City (Scott H. Wyner, of counsel), for the Trustee of the Estates of Paolo Gucci, et al.

1. Gucci America, amicus curiae in the instant appeal, previously was known as Gucci Shops, Inc.

In previous litigation before this Court, Paolo sought a declaration that he had a right to use the name "Paolo Gucci" in connection with the design and manufacture of products in the United States. *See Gucci v. Gucci Shops, Inc.,* 688 F.Supp. 916 (S.D.N.Y. 1988). In that litigation, Gucci Shops asserted a counterclaim for trademark infringement. We concluded that if Paolo Gucci were to continue to use his name as a trademark or trade name, an appreciable number of consumers would confuse his goods with those of Gucci Shops. 688 F.Supp. at 928. Therefore, in order to protect the interests of Gucci Shops in the "Gucci" name, Paolo was enjoined from using "Paolo Gucci" as a trademark or trade name. *Id.* To enable Paolo to exploit his own talents and identity, however, he was entitled to use his name to identify himself as the designer of products sold under a separate trademark which does not include the name "Gucci." *Id.* We ruled in a final judgment, *Gucci v. Gucci Shops, Inc.,* 1988 WL 75263, at *3 (S.D.N.Y. July 13, 1988) (the "Final Judgment"), that "Paolo Gucci shall not assign, license, grant, convey, lease or in any other way transfer any of said rights or delegate any of said obligations, in whole or in part, to any person, natural or juridical, except that he may permit persons who manufacture or distribute products designed by him or under his supervision to use the name 'PAOLO GUCCI' and the 'PG' logo in the form and manner set forth in ... this Final Judgment, provided that such persons first agree in writing to be bound by and to adhere to the terms of this Final Judgment...." The Final Judgment was later supplemented by order of this Court dated January 12, 1994 (the "1994 Order") to clarify that the Final Judgment shall not be construed to prohibit Paolo from "licensing his trademark rights to a corporation which has the right to find sub-licensees for his trademarks and designs ... permitting said corporation to grant said sub-licensees the right to use the phrases 'Designed By Paolo Gucci' and/or 'Selected By Paolo Gucci' in accordance with the Final Judgment ... PROVIDED ABSOLUTELY, HOWEVER, THAT [a]ll designs indicated as being 'Designed By Paolo Gucci' are, in fact, designed by Mr. Paolo Gucci, and all designs indicated as being 'Selected By Paolo Gucci' are, in fact, selected by Mr. Paolo Gucci." 1994 Order ¶ 2.

## II. Paolo Gucci's Bankruptcy

On or about November 9, 1988, Paolo entered into a license agreement (the "CCC License") with the Creazioni Creative Corp. ("CCC"), which, in turn, entered into a license agreement with Orologi, dated January 1, 1990 (the "Sublicense"). Paolo then terminated the CCC License and the Sublicense, thereby creating a direct licensing relationship between Paolo, as licensor, and Orologi, as licensee (the "Orologi License"). Under the Orologi License, Paolo licensed the use of the "Paolo" trademark to Orologi in connection with the sale of fine designer watches designed by Paolo. The Orologi License, by its terms, was subject to the Final Judgment, as later clarified by the 1994 Order.

On February 8, 1994 (the "Filing Date"), Paolo filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Following a motion by the United States Trustee, pursuant to 11 U.S.C. § 1104, the bankruptcy court, by order dated April 8, 1994, approved the appointment of Frank G. Sinatra (the "Trustee") to serve as Chapter 11 trustee for Paolo and certain other debtors related to Paolo. By order dated October 3, 1994, the bankruptcy court substantively consolidated the Paolo estate with the estates of various other Paolo-related debtor cases.

Orologi then alleged that, as of the Filing Date, Paolo had defaulted under the Orologi License in numerous respects. In this regard, Orologi filed a proof of claim in the amount of $8,710,000. In or about May 1994, the Trustee commenced negotiations with Orologi regarding a possible assumption of the Orologi License and settlement of Orologi's claims. These negotiations resulted in an agreement for assumption of the Orologi License as amended by the Trustee and Orologi. Under the amended agreement (the "Amended License"), Orologi was to be permitted to sell watches previously designed by Paolo and was to pay a guaranteed minimum royalty of $50,000 in the first year and $25,000 per annum thereafter. In addition, Orol-

ogi was to be obligated to pay 10% of net sales in excess of $1,750,000 on a yearly basis. Finally, Orologi's claim against the estate was to be reduced from $8,710,000 to $1,150,000.

## III. Proceedings Below

On October 31, 1994, the Trustee moved to assume the Amended License in the bankruptcy court pursuant to 11 U.S.C. § 365. On November 29, 1994, GG filed an objection to the assumption of the Amended License. The Amended License contained two provisions to which GG objected. Neither of the provisions to which GG originally objected is at issue in this appeal. The Amended License was modified to address GG's original objections (the "Second Amended License"). The Second Amended License essentially permits Orologi to sell fine designer watches pursuant to designs previously created and approved by Paolo. It should be noted that Paolo indicated that he would not participate in or perform under the Second Amended License.

On January 6, 1995, the bankruptcy court held a hearing to consider the Trustee's assumption of the Second Amended License. At the hearing, GG argued in opposition that if the existing designs that Orologi planned to sell under the Second Amended License no longer represent Paolo's design tastes and if Paolo advises Orologi that they are not designs that Paolo would want to market today, the marketing of those designs would not constitute "truth in advertising." Transcript of Proceedings Before Judge Gallet, January 6, 1994, at 44–45 ("Tr."). Judge Gallet entered an order, over the objection of GG, approving the assumption of the Second Amended License by the Trustee upon a determination that such assumption represented the Trustee's exercise of sound business judgment in the best interest of the bankrupt estate. *See* Tr., at 39. Judge Gallet concluded, *inter alia,* that Paolo's future cooperation with respect to the Second Amended License was not an issue because that agreement contemplated Orologi's use of designs previously approved by Paolo, without the involvement or participation of Paolo in creating or approving any more designs.[2]

GG appeals to this Court claiming that the assumption of the Second Amended License does not represent an exercise of good business judgment because the Second Amended License (1) excludes Paolo from any present participation in the design, selection, manufacture, or sale of such watches and (2) provides no assurance that the watches which will be sold will conform with designs previously approved by Paolo. GG argues that these flaws in the Second Amended License will expose the estate to post-petition administrative liability for trademark infringement or contempt of court, and therefore assumption of the Second Amended License does not represent reasonable business judgment on behalf of the estate. Gucci America adds in its amicus brief that Orologi should be required to submit to the Trustee samples of designs that appellees claim Paolo previously approved.

## STANDARD OF REVIEW

■ We review the bankruptcy court's conclusions of law *de novo.* *In re PCH Associates,* 949 F.2d 585, 597 (2d Cir.1991). The bankruptcy court's findings of fact, however, "shall not be set aside unless clearly erroneous." 11 U.S.C. Rule 8013; *see also In re PCH Associates,* 949 F.2d 585, 597 (2d Cir.1991). The Second Circuit has instructed that the process of deciding a motion to assume is a determination of fact, not a question of law:

> [A] bankruptcy court reviewing a trustee's ... decision to assume or reject an executory contract should examine a contract and the surrounding circumstances and apply its best "business judgment" to determine if it would be beneficial or burdensome to the estate to assume.... In reviewing a trustee's ... decision to assume an executory contract, then, a bankruptcy court sits as an overseer of the wisdom with which the bankruptcy estate's property is being managed by the trustee....
>
> [I]t is important to keep in mind that the bankruptcy court's "business judgment" in

---

**2.** Since the filing of this appeal, Paolo Gucci died in October 1995. The death of Paolo Gucci does not affect the legal analysis of the issues in this opinion.

deciding a motion to assume is just that—a judgment of the sort a businessman would make. In no way is this decision a formal ruling on the underlying disputed issues, and thus will receive no collateral effect. In a given case, a bankruptcy court might decide that it would be beneficial for the trustee ... to assume a certain contract because the court thinks ... assuming the contract would be a good "business judgment." This "business judgment" could turn out to be wrong.... In such a case, the judge's wrong decision is simply an error of business judgment, not legal error.

*In re Orion Pictures Corp.,* 4 F.3d 1095, 1099 (2d Cir.1993), *cert. dismissed sub nom. Orion Pictures Corp. v. Showtime Networks, Inc.,* — U.S. —, 114 S.Ct. 1418, 128 L.Ed.2d 88 (1994). Therefore, we will set aside the bankruptcy court's determination that it was in the best interest of the estate to assume the Second Amended License only if we conclude that the bankruptcy court's decision was clearly erroneous.

### DISCUSSION

GG raises on appeal various issues concerning certain modifications in the Second Amended License regarding quality control, image and pricing, and Paolo's participation in these areas, contending that these provisions violate this Court's Final Judgment and 1994 Order entered in connection with *Gucci v. Gucci Shops, Inc.,* 688 F.Supp. 916 (S.D.N.Y.1988).

### I. Motion to Assume

Under 11 U.S.C. § 365(a), "[a] trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease term of the debtor." Section 365 "permits the trustee ..., subject to the approval of the bankruptcy court, to go through the inventory of executory contracts of the debtor and decide which ones it would be beneficial to adhere to and which ones it would be beneficial to reject." *In re Orion Pictures Corp.,* 4 F.3d 1095, 1098 (2d Cir. 1993). A bankruptcy court reviewing a trustee's decision to assume or reject an executory contract should apply its best

"business judgment" to determine if it would be beneficial or burdensome to the estate to assume it. *In re Orion Pictures Corp.,* 4 F.3d at 1099; *In re Minges,* 602 F.2d 38, 43 (2d Cir.1979). The bankruptcy court's determination that assumption of the Second Amended License was in the best interest of the estate is not clearly erroneous.

Assumption of the Second Amended License allows Orologi, a reputable company which holds approved Paolo designs, to market the watches designed by Paolo and to pay money to the estate. In addition, assumption of the Second Amended License resolves much of Orologi's significant claims against the estate, which Orologi had asserted with respect to Paolo's alleged breach of the Orologi License. Orologi was willing to compromise its claim in return for a resumed arrangement under the Second Amended License. Finally, assumption of the Second Amended License places little, if any, burden on the estate. As a result of the assumption, Orologi's claim against the estate was reduced by several million dollars, and, under the terms of the Second Amended License, the estate was guaranteed a source of income, and potentially substantial revenue depending on the success of Orologi's efforts.

### II. Exposure to Future Litigation and Contempt

Assumption of the Second Amended License does not necessarily expose the estate to future litigation. The Second Amended License on its face does not violate the Final Judgment because the agreement specifically requires compliance with the Final Judgment. We previously concluded that Paolo Gucci's name may be used only to identify him as the creator of his designs, and the name "Gucci" may not be used as a trademark to identify designs created by Paolo:

[I]t is clear based on the evidence adduced at trial that if Paolo Gucci were to continue to use his name as a trademark or trade name, an appreciable number of consumers would confuse his goods with those of the defendant. Therefore, in order to protect the interests of defendant in the "Gucci" name, Paolo is enjoined from using "Paolo Gucci" as a trademark or trade name. To

enable Paolo to exploit his own talents and identity, however, he is entitled to use his name to identify himself as the designer of products sold under a separate trademark which does not include the name "Gucci."

*Gucci v. Gucci Shops, Inc.*, 688 F.Supp. 916, 928 (S.D.N.Y.1988).

In approving the Second Amended License, the bankruptcy court reasoned that the Second Amended License would not violate the Final Judgment insofar as Orologi is permitted only to manufacture and market presently existing watch designs which Paolo had created or selected. Tr., at 45–46. GG argues that assumption of the Second Amended License will violate the Final Judgment and expose the estate to post-petition liability because (1) Paolo's participation is precluded and (2) there are inadequate quality control provisions. Neither argument is persuasive.

### A. Absence of Participation by Paolo

■ The Second Amended License contemplates the sale by Orologi of watches designed by Paolo, without Paolo's ongoing participation.[3] Orologi plans on using presently existing designs which were designed or approved previously by Paolo. GG argues that allowing the use of Paolo Gucci's name without his ongoing approval divorces Paolo's name from his person, and therefore ignores the rationale behind the Final Judgment. As long as Orologi sells only those designs that were already approved or designed by Paolo, we see no reason why Paolo's ongoing participation is required.

### B. Quality Control

■ GG asserts that the absence of quality and image control provisions of the type previously found in the Orologi License eliminates the guarantee that watches will conform to designs created by Paolo. The elimination of these quality and image control provisions, according to GG, will expose the estate to litigation and contempt of court. As noted by appellees, however, the Final

Judgment does not contain any requirement as to standards of quality of Paolo's product. Therefore, assumption of the Second Amended License cannot be attacked on the ground that a quality control provision in the Second Amended License deviates from a standard articulated in an earlier agreement (either the Orologi License or the Amended License).

GG and Gucci America essentially are concerned with having their own image tarnished through consumers' association of their "Gucci" products with Orologi products of presumably inferior quality. As noted by appellees, in the future, if Gucci America believes that Orologi, in operating under the Second Amended License, has violated the Final Judgment because its product is not of the quality Paolo originally contemplated, GG has the right to commence an action to prove such violations.

### C. The Licensed Product

■ Finally, GG argues that the Second Amended License violates the Final Judgment because "the Second Amended License . . . is a license of the right to use the 'Licensed Name'—defined as 'the personal name Paolo Gucci and the initials "PG" in logo form . . . as set forth in the Final Judgment. . . .' " We are not convinced that this language in the Second Amended License violates the Final Judgment. The Second Amended License allows the licensee to use the personal name of Paolo Gucci (and his initials) to identify Paolo Gucci as the creator of watch designs that he actually created. Furthermore, the Second Amended License provides that "[t]he Licensed Name shall be used only in connection with the 'Paolo' trademark of Licensee in the phrase 'Paolo Designed [or Selected] by Paolo Gucci' or other use pursuant to the Final Judgment." Brief of Appellant Guccio Gucci S.p.A. in Support of Its Appeal From Order Approving Assumption by Chapter 11 Trustee of Second Amended License Agreement with Orologi Paolo Corp., Ex. E ¶ 2.1 ("GG

---

**3.** As stated above, *see supra*, n. 2, Paolo Gucci died in October 1995, after the filing of this appeal. The fact that Paolo's death obviously precludes his participation with respect to the

Second Amended License does not affect our analysis because the Second Amended License already precludes Paolo's participation.

Brief"). GG correctly points out that "[t]he Final Judgment ... make[s] clear that the right to use the name 'Paolo Gucci' is not a form of intellectual property that can be bought and sold by anyone.... [T]he Final Judgment enjoined Paolo and his licensees from, *inter alia*, using the name 'Paolo Gucci' as a trademark, service mark, business name, or trade name." Reply Brief of Appellant Guccio Gucci, S.p.A. in Support of Its Appeal from Order Approving Assumption by Chapter 11 Trustee of Second Amended License Agreement with Orologi Paolo Corp., at 3. However, the fact that the licensee of these designs may identify Paolo Gucci as the creator of the designs does not violate the Final Judgment. No one disputes that it would be impermissible for Orologi to take a newly created design (one not created or already approved by Paolo) and to attach the "Paolo Gucci" name to it. The Second Amended License does not anticipate this sort of prohibited conduct. Instead, the Second Amended License refers to the Final Judgment and provides that any use of designs created by Paolo Gucci must adhere to the Final Judgment. The Second Amended License clearly states that the name "Paolo Gucci" is only to be used in connection with the "Paolo" trademark as in the phrase "Paolo Designed [or Selected] by Paolo Gucci." *See* GG Brief, Ex. E ¶ 2.1.

Finally, to the extent there is any exposure to future litigation, the conclusion that such exposure is outweighed by the benefits of assuming the Second Amended License is not clearly erroneous.

### III. Rights of Guccio Gucci and Gucci America under the Final Judgment

■ If Orologi later breaches the agreement by violating the Final Judgment, then GG and Gucci America can seek relief at the appropriate time. This appeal is not the proper time or place to seek equitable relief for potential future harm to GG or Gucci America; this appeal arises out of a summary proceeding to decide whether assumption of the Second Amended License is in the best interest of the estate. "[A]dversary proceeding issues are not to be decided as part of a motion to assume." *In re Orion*

*Pictures Corp.,* 4 F.3d 1095, 1099 (2d Cir. 1993). Therefore, the relief sought by Gucci America (depositing samples of pre-approved Paolo Gucci designs) is not appropriate at this time.

The Trustee determined that the assumption of the Second Amended License and the resolution of Orologi's claim against the estate made good business sense. The bankruptcy court agreed. GG's and Gucci America's opposition, based upon potential liability arising out of violation of the Final Judgment, does not provide a basis for reversing the bankruptcy court's determination that assumption of the Second Amended License was in the best interest of the estate.

### CONCLUSION

For the foregoing reasons, the bankruptcy court's decision is affirmed.

SO ORDERED.