The APPLESEED FOUNDATION
INC., Plaintiff,

v.

APPLESEED INSTITUTE,
INC., Defendant.

No. CIV. 97–1332 (TFH).

United States District Court,
District of Columbia.

July 30, 1997.

Hugh Latimer, Wiley, Rein & Fielding, Washington, DC, for Plaintiff.

Deborah M. Lodge, Patton, Boggs, L.L.P., Washington, DC, for Defendant.

## MEMORANDUM OPINION

THOMAS F. HOGAN, District Judge.

Pending before the Court is plaintiff's motion for a preliminary injunction. The parties submitted briefs and exhibits on the motion, and the Court held a hearing on July 28, 1997. After considering the submissions of the parties and the arguments made at the hearing, the Court will grant plaintiff's motion and will enjoin defendant from continuing to use plaintiff's mark.

### I Background

This case involves allegations of trademark infringement and dilution by one non-profit organization against another. Plaintiff Appleseed Foundation, Inc., ("Foundation") was founded in 1993 by a group of Harvard Law School alumni, who sought to "mobilize lawyers and other professionals to utilize their skills and experience to engage in public service advocacy." The Foundation operates by organizing local affiliates to pursue public advocacy projects. There are now affiliates in nine states and in the District of Columbia, and the Foundation is organizing affiliated; in three more states. These local affiliates are allowed to choose their own names, but each must incorporate the word "Appleseed;" all do so in a prominent manner.

Although the Foundation characterizes itself as primarily a legal advocacy and service group, local affiliates are permitted to pursue their own areas of interest; therefore, the extent and character of the Foundation's overall involvement in the public service field is largely defined by the individual interests of the local affiliates. Some local affiliates are involved in educational issues; in particular, D.C. Appleseed has worked to prevent the city's Control Board from taking over the District's public schools.

The Foundation applied for and received a federal service mark registration for "Appleseed Center for Law and Justice" in 1995 (Registration No. 1, 924, 249). In August of 1996, it applied for a service mark for "Appleseed." The Patent and Trademark Office approved this application, and the registration can become final at the end of the mandatory comment period, which is now underway.

The Foundation has received national and local press coverage since 1993, and has been featured in articles in the *New York Times, Washington Post, Christian Science Monitor, Wall Street Journal, and International Herald Tribune,* among others. Several

prominent persons on its board also give the Foundation a certain amount of notoriety, and the Foundation has received moderate grants (most in the $10,000–$30,000 range) from several charitable foundations.

Defendant Appleseed Institute ("Institute") was incorporated in Massachusetts in August 1996 by its founder, William McCarthy. Mr. McCarthy declares that he chose the name "Appleseed" for his group because of his lifelong admiration for the legendary hero Johnny Appleseed,[1] and because the name and the legend fit his organization's mission of improving public school education by promoting charter schools. Mr. McCarthy states that he has spent over $250,000 and countless hours developing his organization. Although it currently concentrates its efforts on the development of charter schools in the District of Columbia, the Institute has stated its plans to expand efforts into other cities.

Plaintiff states that it began to get telephone calls in March 1997 expressing confusion and concern with its stance on charter schools. These calls demonstrated that people were confusing the Institute's work with that of the Foundation. The Foundation states that it has never worked to support charter schools, and that it was alarmed by the confusion.[2] Plaintiff states that it has continued to receive such calls and that several of its board members, teachers, and members of the DC community have expressed concern and confusion on the issue. The Foundation informed its counsel of the problems, and on May 14, 1997, counsel informed defendant of the alleged infringement. Defendant responded that it did not plan to change its name, and plaintiff then filed suit. Defendant has subsequently changed its name—to the "Johnny Appleseed Institute, Inc."—but it maintains that the change was not expressly motivated by the legal action.

## II  Preliminary Injunction

Plaintiff has moved for a preliminary injunction against defendant's continued use of the mark "Appleseed." The standard for a preliminary injunction in trademark cases is the same as in other cases. *Sears, Roebuck and Co. v. Sears Financial Network, Inc.*, 576 F.Supp. 857, 864 (D.D.C.1983). Therefore, in order to prevail on its motion, plaintiff must show (1) that it has a likelihood of success on the merits, (2) that plaintiff would suffer irreparable injury without the injunction, (3) that the injunction would not substantially harm other parties, and (4) that the public interest is served by the injunction. *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C.Cir.1977); *Sears*, 576 F.Supp. at 864.

## III  Likelihood of Success on the Merits

Plaintiff presents two claims to support its motion for preliminary injunction. First, plaintiff claims that defendant's use of "Appleseed" is trademark infringement under 15 U.S.C. § 1114(1). Second, plaintiff argues that defendant's use is trademark dilution under 15 U.S.C. § 1125(c). The Court may grant plaintiff's motion for preliminary injunction only if it finds a likelihood of success on the merits of at least one of these two claims.

### A.  Trademark Infringement

Under the Lanham Act, a trademark's owner is protected from use, imitation, or copy of the mark if such use is likely to cause consumer confusion. 15 U.S.C. § 1114(1). This confusion need not necessarily result from direct competition between the entities; instead, the statute requires a showing of "source confusion" where consum-

---

**1.** "Johnny Appleseed" was the nickname of John Chapman, who was born September 26, 1774, in Leominster, MA. Although it is impossible to completely divorce his legend from history, Johnny moved to western Pennsylvana and began to plant appleseeds throughout the Ohio Valley. He is credited with founding several nurseries and with teaching the art of caring for apple orchards to Native Americans and to American pioneers alike. John Chapman died in 1845 but left as his legacy thousands of acres of apple orchards throughout Ohio, Indiana, Illinois, and Pennsylvania. According to defendant it is this image of planting seeds to bear fruit in the future that Mr. McCarthy wished to bestow on his new, educational organization.

**2.** Charter schools are often perceived as a threat to a strong, local public school system.

ers in the relevant product market are likely to believe that defendant's products or services come from the same source or are affiliated with plaintiff. *Foxtrap Inc. v. Foxtrap, Inc.*, 671 F.2d 636, 639 (D.C.Cir.1982).

■ In order to prove its claim for infringement, plaintiff must show (1) that it owns a valid trademark, (2) that the mark is distinctive on its own or that it has acquired a secondary meaning, and (3) that there is a likelihood of confusion. *Sears, Roebuck*, 576 F.Supp. at 861; *American Ass'n for the Advancement of Science v. Hearst Corp.*, 498 F.Supp. 244, 254 (D.D.C.1980). There is no dispute that plaintiff holds a valid trademark, so the Court need only evaluate the remaining two elements.

### 1. Distinctiveness

■ In order to receive trademark protection, a mark must be distinctive. Therefore, generic terms—such as "aspirin" or "cola"—cannot be protected. *American Ass'n for the Advancement of Science*, 498 F.Supp. at 254. However, a mark is presumptively distinctive if it is either fanciful, arbitrary, or suggestive. *Id.* Furthermore, a mark that is merely descriptive may attain protection if it has acquired a secondary meaning associated with a specific source (e.g. "Science" magazine). *Id.*

The moniker "Appleseed" is arbitrary, and therefore is distinctive. It is not a generic term that is used to describe the services that plaintiff provides; while there may be a metaphorical connection, there is no literal connection between the legend of Johnny Appleseed and the public advocacy performed by plaintiff and its affiliates. There is no linguistic reason for plaintiff to choose this name to identify its product; the word itself carries little meaning outside the pro-

duce business. Instead, plaintiff chose the name for arbitrary reasons, so use of the name itself is distinctive, even without considering the secondary meaning that the name has acquired.[3]

### 2. Likelihood of Confusion.

■ In assessing the likelihood of confusion, the Court looks at the effect that defendant's use of the mark has or would have on prospective consumers within the relevant product market. *Sears, Roebuck*, 576 F.Supp. at 861: *American Ass'n for the Advancement of Science*, 498 F.Supp.,. at 258. Of course, evidence of actual confusion is substantial proof of this element. *Malarkey–Taylor Associates. Inc. v. Cellular Telecommunications Industry Ass'n*, 929 F.Supp. 473, 477 (D.D.C.1996). In the absence of such hard evidence, however, the Court can assess the likelihood of confusion by examining factors such as (1) the strength of the senior user's mark, (2) the degree of similarity between the two marks, (3) the proximity of the products, and (4) the intent of the junior user. *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961), *cert. denied* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961). *See also Sears, Roebuck*, 576 F.Supp. at 861.

Plaintiff has presented evidence of existing confusion. Its declarants describe confused, concerned telephone calls from board members, teachers, and local citizens who mistakenly attributed the actions of defendant to plaintiff. While plaintiff's evidence is not overwhelming, it is substantial evidence that the dual use of "Appleseed" may cause confusion.

The other factors weigh in plaintiff's favor as well. Plaintiff's "Appleseed" mark, while perhaps not powerful in the general population, is relatively strong within the narrow

---

**3.** The distinctiveness of this mark is not undermined by third party usage of "Appleseed." While defendant presents a list of more than 15 federally-registered business uses of the word, almost all of these businesses compete in different markets than does plaintiff. Most of the third party uses are in the food service industry or in retail sales. Only one is a non-profit—Appleseed Book Series—and that organization's reach is limited to the provision of children's books within the state of Texas. Therefore, none

of these third party uses weakens the distinctiveness of plaintiff's mark within the field of public advocacy. *See. e.g., National Cable Television Ass'n v. American Cinema Editors, Inc.*, 937 F.2d 1572, (Fed.Cir.1991) (Numerous uses of "ACE" in unrelated fields does not weaken mark). *Cf. Star Markets v. Texaco, Inc.*, 950 F.Supp. at 1036 (Court denied grocery's dilution claim after finding over 50 other uses of "Star" by grocery-related businesses in Western United States).

public service field.[4] Plaintiff has received significant press coverage and the notoriety of its board members provides the name some additional cache. In addition, plaintiff's evidence shows that reporters looking for defendant Appleseed came first to plaintiff, thinking that the organizations were the same. This tends to support plaintiff's argument that its organization is associated with the name "Appleseed."

In addition, the two marks are strikingly similar. While each mark contains some different wording, the central, dominant feature of the mark—the name "Appleseed"—is shared. There also is evidence that each organization is occasionally referred to only by this single, identifying appellation. It is clear that a single shared word can create sufficient similarity if it dominates the mark. *See Sears, Roebuck,* 576 F.Supp. at 862 ("Sears, Roebuck and Co." and "Sears Financial Network" similar, despite sharing only one word), *American Ass'n for the Advancement of Science,* 498 F.Supp. at 259. ("Science" magazine and "Science Digest" similar where latter emphasized "Science" over "Digest"). *Cf. Ringling Brothers v. Utah Division of Travel,* 955 F.Supp. 605 (E.D.Va. 1997) (Some similarity, but not enough, between "Greatest Show on Earth" and "Greatest Snow on Earth" because "show" and "snow" are dominant words and are easily distinguishable). Therefore, the two marks are strikingly similar.

Furthermore, plaintiff and defendant occupy proximate "product" markets. While plaintiff certainly pursues a broader range of issues, both plaintiff and defendant engage primarily in the occupation of social advocacy and activism. Indeed, plaintiff's DC affiliate has been involved in the local public school controversy, placing it in direct competition with defendant. That plaintiff's reach may extend more broadly than defendant's into a variety of legal and social issues should not shade the proximate markets occupied by the parties. *See Sears, Roebuck,* 576 F.Supp. at 863 (Defendant Sears Financial in direct competition with the financial services department of Sears, Roebuck, although latter also provides a wide range of other services and products).

The Court does not see that defendant's intent in choosing "Appleseed" was particularly predatory. Defendant made some attempts to search for conflicting uses, and there is no evidence that defendant intended to capitalize at all on plaintiff's name. However, defendant's blameless intent is insufficient to overcome the weight of the other factors, especially in light of evidence of actual confusion. Therefore, it appears likely that confusion would result from defendant's continued use of "Appleseed."

### 3. Conclusion

To establish a claim for trademark infringement, plaintiff must show (1) that it owns a valid trademark, (2) that the mark is distinctive on its own or that it has acquired a secondary meaning, and (3) that there is a likelihood of confusion. *Sears, Roebuck,* 576 F.Supp. at 861; *American Ass'n for Advancement of Science v. Hearst Corp.,* 498 F.Supp. 244, 254 (D.C.1980). Plaintiff has a valid trademark. As the analysis above shows, plaintiff's mark is distinctive. Finally, with the evidence of existing confusion, the similarity of the marks, the geographical proximity of the entities. and the similarity of the products, there is a substantial likelihood of confusion. Therefore, plaintiff has shown a likelihood of success on this claim.

### B. Trademark Dilution

Because plaintiff has shown a likelihood of success on the merits of its trademark infringement claim, success on its trademark dilution claim is not essential to the motion for preliminary injunction. However, the Court will briefly address this second claim as well.

Congress amended the Lanham Act, effective January 16, 1996, to include a cause of action for dilution of a trademark. 15 U.S.C. § 1125(c). In order to establish a case for dilution under § 125(c), plaintiff

---

**4.** Because this factor is merely one of several, the inquiry into the strength of plaintiff's mark is significantly less rigorous that the inquiry into the marks' fame under the trademark dilution analysis.

must show (1) that it owns a mark which is "distinctive and famous", (2) that defendant adopted its mark after plaintiff's became famous, and (3) that defendant's mark dilutes[5] the famous mark. *Id.; Clinique v. Dep Corp.,* 945 F.Supp. 547, 561 (S.D.N.Y.1996).

Unlike the trademark infringement statute, which protects all trademarks from unauthorized use that is likely to cause confusion, the trademark dilution statute only protects marks that are both "distinctive and famous." 15 U.S.C. § 1125(c). *See also Knaack Manufacturing Co. v. Rally Accessories,* 955 F.Supp. 991, 1005 (N.D.Ill.1997), *Star Markets v. Texaco,* 950 F.Supp. 1030, 1032 (D.Haw.1996). Among the statutory factors to consider in assessing a mark's fame are: (1) the inherent and acquired distinctiveness of the mark, (2) the duration and extent of use, (3) the extent of advertising, (4) the geographical extent of use, (5) the channels of trade within which the mark is used, (5) the degree of recognition within the relevant market (6) the nature and extent of use by third parties, and (7) registration. 15 U.S.C. § 1 125(c).

■ Applying those factors, plaintiff cannot show that its mark has attained sufficient fame to trigger protection under the trademark dilution statute. Plaintiff has used the mark for only three years and has not engaged in widespread advertising. In addition, while the Foundation has achieved some public notice, it has not received such widespread attention as to become truly "famous." Thus, the limited duration, scope, and exposure of plaintiff's use precludes the claim for trademark dilution. *See WAWA, Inc. v. Haaf,* 40 U.S.P.Q.2d 1629, 1996 WL 460083 (E.D.Pa.1996) (Finding that WaWa Mart, which had done business for over 90 years and was known throughout the Atlantic region, was famous and distinctive); *Genovese Drug Stores, Inc. v. TGC Stores Inc.,* 939 F.Supp. 340, 350 (D.N.J.1996) (Finding that company's slogan "We'll Take Good Care of You," used for only nine years and only in limited advertising, was not famous).

Plaintiff most likely could show, that defendant's mark threatens to dilute the effect of its own mark. However, because plaintiff's mark has not yet attained the fame and notoriety necessary to achieve protection under the statute, plaintiff's claim for trademark dilution is not likely to succeed on the merits.

## IV Irreparable Injury and Balance of Harms

■ Trademark infringement by its very nature causes irreparable injury. *Sears. Roebuck,* 576 F.Supp. at 864. *See also Malarkey–Taylor,* 929 F.Supp. at 478; *AAAS v. Hearst,* 498 F.Supp. at 262. Evidence of actual confusion bolsters this presumption. *Crime Control, Inc. v. Crime Control, Inc.,* 624 F.Supp. 579, 580 (D.D.C.1984). Plaintiff has shown a likelihood of prevailing on its claim for trademark infringement, and plaintiff presents evidence of actual confusion that has already occurred. Therefore, the Court concludes that a preliminary injunction against continued use of the mark by defendant is necessary to prevent irreparable harm to plaintiff's operations within the community.[6]

Defendant argues that it will suffer significant harm if the injunction is granted. Over the past year defendant has spent time and money developing its contacts and business under the name "Appleseed Institute," at least some of which would be wasted if defendant were forced to proceed under a different name. Furthermore, defendant argues that its founder purposely chose the name

---

5. The dilution can occur either by tarnishment (a junior mark presents shoddy products or services, thereby damaging the reputation of the senior mark), or by "blurring" (the junior use erodes the distinctive, identifying force of the senior mark). *Mead Data Central, Inc. v. Toyota Motor Sales Inc.,* 875 F.2d 1026, 1031 (2d cir. 1989); *Ringling Brothers v. Utah Division of Travel,* 955 F.Supp. 605, 613 (E.D.Va.1997). In this case, plaintiff asserts that defendant has diluted its Appleseed mark by blurring.

6. Defendant argues that plaintiff is not in danger of any injury. However, there is evidence of actual confusion, and analysis under the *Polaroid* test suggests that further confusion is likely. Since plaintiff depends on numbers of relatively small contributions for its fundraising, any confusion as to its image could threaten its future. Therefore, defendant does not present a strong argument to rebut the presumption of irreparable harm.

678

because of his admiration for Johnny Appleseed, and that this association with the folk hero would be lost under a new name.

Under the statute, injunctive relief is the normal remedy for trademark infringement. 15 U.S.C. § 1114(2). It is inevitable that defendants will suffer some hardships, but these hardships are outweighed by the confusion that will likely result from having two "Appleseed"'s involved in the public school debate and by plaintiff's loss of control over its reputation. Furthermore, defendant has been in operation for less than a year and has not become so associated with one name that it could not retain or recapture its goodwill.[7] Therefore, the Court finds that the prospect of irreparable injury and the balance of harms favor plaintiff and finds that plaintiff is entitled to a preliminary injunction.

### V  Subsequent Name Change

Since the commencement of this litigation, defendant has changed its name to avoid confusion with plaintiff Defendant now calls itself the "Johnny AppleSeed Institute;" defendant argues that there is now no need for an injunction to protect plaintiff.

■ This Circuit has held that competitors using the same name must take reasonable precautions to prevent mistakes and confusion between marks. *Basile v. Basile*, 899 F.2d 35, 37 (D.C.Cir.1990). Therefore, it imposes a "heavy burden" on competitors to come forth and show that potential confusion has been allayed by subsequent changes. *Id.* at 38 (Quoting *Home Box Office, Inc. v. Showtime/The Movie Channel Inc.*, 832 F.2d 1311, 1316 (2d Cir.1987)). As an example, in *Basile* the D.C. Circuit found that altering the logo and adding a word—in that case, adding "Venezia" to the name "Basile"—was insufficient to distinguish the junior mark. *Id.*,

■ The present case is similar. Adding "Johnny" will not likely have much effect,

since "Johnny Appleseed" and "Appleseed" each conjure up the same images. Organizations are frequently referred to by a single dominant word in their names (e.g."Sears", "Woodies"), and defendant has not shown that consumers would distinguish a "Johnny Appleseed" organization from an "Appleseed" one.[8] This small cosmetic change is unlikely to adequately prevent future confusion, therefore, defendant's minor name change does not alter the need for a preliminary injunction.

### ORDER

Pending before the Court is plaintiff's motion for a preliminary injunction. For the reasons stated in the Court's Memorandum Opinion, it is hereby

**ORDERED** that plaintiff's motion for a preliminary injunction is **GRANTED**; it is further

**ORDERED** that defendant Johnny AppleSeed Institute, Inc. is enjoined from

a. Using the Appleseed trademark, trade name, or distinctive features commonly associated therewith;

b. Infringing The Appleseed Foundation's "Appleseed" trademark in any manner including, but not limited to, the use of the name "Appleseed;"

c. Engaging in any course of conduct likely to mislead the public into believing that defendant Johnny AppleSeed Institute is affiliated or otherwise connected to plaintiff Appleseed Foundation;

d. Engaging in any course of conduct likely to mislead the public into believing that the services provided by defendant Johnny AppleSeed Institute are sponsored or otherwise approved by plaintiff Appleseed Institute.

---

7. Indeed, defendant has already changed its name once, and now calls itself the "Johnny Appleseed Institute," presumably without a significant loss of goodwill in the community.

8. Judge Learned Hand once doubted that he—the most sophisticated of consumers—would distinguish between a pen made by the senior mark "Waterman" and one made under the junior mark "A.A. Waterman." *L E Waterman v. Modern Pen Co.*, 193 F. 242, 247–48 (S.D.N.Y.1912).